## JAMES A. HENLEY v. M. L. SULLIVANT, Appellant.

### Division One, March 15, 1913.

1. **EQUITY: Reformation of Contract: Mistake.** Equity has power to reform a written contract, which, by reason of a mutual mistake of fact, fails, in a material particular, correctly to express an actual previous oral agreement.

2. ———: ———: ———: **Evidence.** The evidence in this case is *held* to have the clearness, cogency and certainty requisite to warrant the exercise by a court of equity of the power to reform a written contract for the sale of land on the ground of mutual mistake of fact.

Appeal from Cass Circuit Court.—*Hon. Nick M. Bradley*, Judge.

AFFIRMED.

*James C. Rieger* and *A. A. Whitsitt* for appellant.

So strong is the legal presumption that a written contract, unambiguous and complete in itself, contains all the terms of the agreement between the parties that parol evidence will not be heard in an action on a contract to vary or contradict its terms. Meredith v. Holmes, 105 Mo. App. 352; Evans v. Mfg. Co., 118 Mo.

546; Tracy v. Iron Works, 104 Mo. 193. Evidence clear and convincing, that there has been a mistake, and that it was a mutual mistake must be produced, fully satisfying the mind of the chancellor, before a written instrument can be changed. Parker v. Vanhoozer, 142 Mo. 621; Kilpatrick v. Wiley, 197 Mo. 164; Judson v. Mullinax, 145 Mo. 630; Underwood v. Cave, 176 Mo. 1; Sweet v. Owens, 109 Mo. 1; Griffin v. Miller, 188 Mo. 327; Bartlett v. Brown, 121 Mo. 353; Brown v. Gwinn, 197 Mo. 499; 1 Story's Equity Jurisprudence, secs. 157-161; Pomeroy's Equity Jurisprudence, sec. 856; Fanning v. Doan, 139 Mo. 392; Lanyon v. Chesney, 186 Mo. 540. The effect of the words "more or less" or other expressions of similar import, added to the statement of quantity, can only be considered as intending to cover inconsiderable or small differences one way or the other, and do not in themselves determine the character of the sale. Nor can they be regarded as stipulations intended to cover any after discovered errors, and inquiry is pertinent and proper while the contract remains executory. 2 Warville on Vendors, secs. 832-833. Where land is described by metes and bounds "containing" a given number of acres "more or less" metes and bounds will govern in the absence of fraud. Mires v. Summerville, 85 Mo. App. 183; McGhee v. Bell, 170 Mo. 133; Sickle v. Iron Co., 84 Mo. 161.

*Charles W. Sloan, R. T. Railey* and *James T. Burney* for respondent.

The power of the court to correct and reform the contract made between the parties so as to express the real purpose and intention is undisputed, either by bill to foreclose or in answer where affirmative relief is sought. Leitensdorfer v. Delphy, 15 Mo. 167; Williamson v. Brown, 195 Mo. 332; Scott v. Gordon,

109 Mo. App. 695; Owens v. Railroad, 110 Mo. App. 320; Henderson v. Beasley, 137 Mo. 199; Ezell v. Peyton, 134 Mo. 484; 20 Am. & Eng. Ency. Law (2 Ed.), 825; 24 Ib. 648-9. And the evidence was overwhelming that the Dr. James Dunn, Jr., property only was intended to be sold, and that part of description by metes and bounds, was erroneous.

BLAIR, C.—This is a suit to reform and enforce, after reformation, a contract whereby plaintiff agreed to sell and defendant to purchase property in the city of Pleasant Hill. The contract description is of a tract twenty-four rods wide, from east to west, and thirty rods long, from north to south, "containing 3 acres, more or less" and "being known as the Dr. James Dunn, Jr., place." The petition alleges, in effect, that the dimension from north to south should have been given as twenty instead of thirty rods. The question argued in this court is as to the sufficiency of the evidence to establish mutual mistake. It will be observed that the description by metes and bounds in the contract includes four and one-half acres and that which the petition alleges to be correct includes exactly three acres.

In 1866 Dr. James Dunn, Jr., acquired title to the south two acres of the tract and in 1867 erected a residence thereon and otherwise improved it and occupied it thenceforward. In 1881 one Phelps owned one acre adjoining Dunn's property on the north, twenty-four by six and two-thirds rods, and this he sold to Dunn, describing it as "containing one acre" but gave its metes and bounds as twenty-four by *sixteen* and two-thirds rods. Phelps had no title to the north ten rods of the parcel included in the meets and bounds then given though he did own the south one acre.

Dunn, until his death in 1884, occupied the three acres to which he had title, and his enclosure, so far

as the evidence shows, never included any of the north ten rods of the parcel described by metes and bounds in the Phelps deed. For a great many years the fence forming the north boundary of the inclosure around the residence erected by Dunn had been where it was when the present controversy arose. Owing to Dunn's long occupancy the premises occupied by him became generally known in the community as "the James Dunn place" or "the Dr. James Dunn place." So well was it known by this designation that interests in it were sometimes conveyed by that description and defendant, through his attorneys, in examining the abstract, accepted these conveyances as sufficient to devest the interests thus described. As stated none of the northern ten rods in the parcel described by metes and bounds in the Phelps deed and in the contract was in the enclosure which was known as the James Dunn place and several of Dunn's heirs in conveying their interests, ignored the error in Phelps's deed. One of the heirs, however, executed a deed of trust in which he included the ten rods and a sale occurred under this conveyance. His interest was also sold under execution and the whole four and one-half acres described in the deed. This description was carried forward in subsequent deeds and was used in the deed from one Arnold by which plaintiff acquired whatever title he had. This deed to plaintiff did not describe the property as "the Dunn place" but, as in case of most of the others, did give the quantity conveyed as "three acres."

In 1901 defendant moved to a large farm adjoining Pleasant Hill and in 1907 seems to have moved into that city. He knew "the Dunn place" and in 1907 talked with plaintiff about renting it but these negotiations bore no fruit. In the spring of 1908 defendant arranged to purchase the premises from plaintiff and took possession some time in April and began repairing and papering the house, expending prob-

ably $150 for these and kindred purposes before the execution of the written agreement May 23, 1908. Defendant moved his family into the house about that date, having moved part of his household goods prior thereto. In the contract the premises were described (by metes and bounds) as twenty-four by thirty rods "containing three acres, more or less . . . said property being known as the Dr. James Dunn, Jr., place." Plaintiff and defendant went together to the scrivener and the latter·and plaintiff testify the scrivener was told, merely, that plaintiff was selling and defendant buying the "James Dunn place." The scrivener asked for the description and plaintiff handed him the Arnold deed. The description by metes and bounds (twenty-four by thirty rods) was, in the absence of the contracting parties, copied from this, but to this description was added; "said property being known as the Dr. James Dunn, Jr., place" and "containing 3 acres, more or less." On the same day, under an agreement to pay rent until the trade was closed, defendant gave plaintiff a check "for rent Dunn property month of May." Subsequently, on the same agreement, defendant paid $60 "for account rent Dunn property." He was then and had been for months occupying "the Dunn place."

After the execution of the contract sought to be reformed plaintiff forwarded an abstract as agreed and defendant submitted it to an attorney who returned it with several requirements. In one of these he pointed out that Phelps, in his deed to Dunn, described two and one-half acres "when he owned only one acre" and that "at this point James Dunn, Jr., owned a three-acre tract, although he had deeds calling for four and one-half acres." In another requirement, referring to a subsequent deed executed in 1885 by one of James Dunn's heirs, the examiner in construing that part of the description relating and referring to "the land conveyed by Phelps to Dunn"

points out that it "seems to cover the *north one acre of the land in question.*" These requirements were brought directly to defendant's attention but neither he nor his attorney ever suggested that Phelps's lack of title to the north ten rods described in his deed to Dunn constituted a defect in the title of the tract defendant was purchasing. The requirements were discussed by plaintiff and defendant and the former, with defendant's knowledge of his intent, instituted a suit to quiet title in so far as that was necessary to meet the requirements made by defendant's attorney. There was judgment in this suit in January, 1909. The abstract was recertified to date and, at defendant's request, sent to him in Kansas City.    Subsequently, plaintiff tendered defendant a deed to the twenty-four by twenty rod tract and defendant said he had the abstract and wanted to look over it and would let plaintiff know in a week. Defendant then submitted the abstract to another attorney who wrote plaintiff saying, in substance, that the title was "not good to the three acres," was good only to the ground inclosed and in defendant's occupancy; that this amounted to only a little over two acres; that plaintiff had delayed beyond the date fixed by the contract for closing the trade; and asking the return of the money paid on the contract and sums expended on the property.

J. V. Hon owned, and for at least fifteen years had occupied, the ten rod strip which defendant claims was properly included in the contract. Defendant knew of Hon's occupancy before he executed the contract.

Defendant admits he was present when the directions were given as to drafting the contract in suit but says that plaintiff merely told the scrivener to copy the description from the Arnold deed. Defendant also testified plaintiff told him he owned part of the ground in Hon's inclosure. Plaintiff denies having made this statement.

The Dunn place as inclosed at the time defendant's occupancy began and for some time theretofore contained about two and two-fifths acres within the fences. That part outside the fences, but included in the description in the deed tendered, is said to be in certain adjacent streets. The abstract showed this fact by a plat but no requirement relating thereto was made by defendant or his attorney, nor does it appear that any streets were ever platted or dedicated by any one owning the property or that the public has acquired any rights by user.

The court gave judgment reforming and enforcing the reformed contract as prayed and defendant appealed.

The power of a court of equity to reform a written contract which by reason of a mutual mistake of fact fails, in a material particular, to express correctly an actual previous oral agreement of the parties is not questioned. Neither is it contended this is not a proper case for the exertion of that power if the facts are as alleged in the petition. It is not suggested that equities of third persons have intervened or that plaintiff has been guilty of any culpable negligence in the premises.

The sole error assigned, the sole insistence of defendant's counsel, is that the evidence adduced lacks the clearness, cogency and certainty requisite to warrant the exercise of the power to reform a contract on the ground of mutual mistake. The question presented is, therefore, purely one of fact.

In this case the evidence is overcast with no suspicion arising from long delay in instituting suit nor is this court under the necessity of speculating as to what explanations of statements and conduct the hand of death has stricken from the record. The suit was begun promptly upon the heels of the first claim made by defendant under the error in description now sought to be reformed and both parties to the contract in-

volved are living and testified in the case. Further, in considering the evidence it must be remembered the trial judge had the witnesses and parties before him and deference is due his findings by reason of that fact.

At the outset it is to be observed that the description in the contract is ambiguous. In the description by metes and bounds the length of the parcel, from north to south, is set down as thirty rods.

**Reformation of Contract.** To the description by metes and bounds is added, however, the statement, in effect, that the property intended is "The Dr. James Dunn place" and the acreage given corresponds to that part of the description and to that of the tract described in plaintiff's tendered deed and not to the acreage of the parcel described by metes and bounds in the contract.

The evidence is conclusive that the "Dr. James Dunn place" did not include and never had included the ten rods now in dispute. Dunn had neither title to nor possession of them. On the contrary Hon had had open possession for many years and no

**Evidence.** claim is made his title was in any way defective. The James Dunn place was and had long been known in the community as such and defendant knew it by that name. He took possession of it and paid rent on it by that name before entering into the contract in suit. His only obligation to pay rent related to the land he agreed to buy. He and his attorneys who examined the abstract ignored the ten rod strip in submitting requirements as to the title. These requirements explicitly recognize the fact Dunn never had title thereto. After all this defendant consented to plaintiff's instituting suit to quiet title to meet the requirements made, which bore no relation to the ten rod strip. These things point conclusively to the fact that defendant understood he was buying the James Dunn place as known by that designation. The scrive-

ner and plaintiff testify that the instructions given at the time the contract was drawn were that defendant was buying the Dr. James Dunn place.

It is true that defendant denies this, but, besides the testimony of the two witnesses mentioned, he is confronted by the fact this description was put into the contract by the scrivener though not included in the Arnold deed (which defendant says was all that was given the scrivener from which to secure the description) and confronted also by his own conduct which is wholly inconsistent with his present claim. Under the contract as reformed defendant will get all he thought he was buying in the first place. There is nothing in the record to show lack of title in plaintiff to that part of the three acre parcel lying outside the Dunn inclosure. As stated above no dedication of streets was attempted to be proved nor was any user shown. Had defendant desired to base an agreement upon the existence of streets upon a part of the ground plaintiff contracted to convey it was incumbent upon him to adduce some legal evidence of their existence. This court would not be justified in disturbing the judgment on the ground of the insufficiency of the evidence. The judgment is affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of Blair, C., is adopted as the opinion of the court. All the judges concur.